We'll hear argument now in the case of United States v. Adefusi. Mr. Stevenson. Good morning, Your Honors. May it please the Court, Adam Stevenson on behalf of Babajide Adefusi. In 2018, Mr. Adefusi entered into a plea agreement in the Southern District of Texas related to passport fraud. That written plea agreement contained three different provisions, two of which are the focus of this appeal. That plea in paragraph 10a, an agreement stating that the United States will not pursue any additional charges arising out of the scheme alleged in the information. And then in paragraph 11, the United States that agrees it will not further criminally prosecute a defendant in the Southern District of Texas for offenses arising from conduct charged in the information. Subsequent to the 2018 plea agreement, the case in the Central District of Illinois arose in which the Central District of Illinois charged Mr. Adefusi with wire fraud, including an overlapping aspect of the 2018 case, specifically the use of the Patrick Wiltord passport and the bank account created thereof. Mr. Adefusi moved for enforcement of the plea agreement, arguing that the prior agreement in paragraph 10, specifically that the United States will not pursue the scheme alleged in the information, precluded the subsequent prosecution in the Central District of Illinois. The district courts denied that reading, instead relying singly on Ingram, indicating that the second agreement, that in paragraph 11, related to the entirety of the agreement and limited that agreement only to the U.S. Attorney's Office for the Southern District of Texas. Doing so was erroneous and incorrect. In Ingram, there was a agreement, the primary agreement was within the District of Colorado, and the claim was that there was an implicit promise not to prosecute in the Western District. There was not the additional agreement that is in Mr. Adefusi's case in paragraph 10, again relating to the scheme alleged. And when considering this case under Ingram and other cases, this court evaluates plea agreements under standard contract principles, with one notable exception being that ambiguities are read in favor of the defendant. With regard to contract principles, notable aspects of this case, different language creates a common, if not automatic, presumption of different meaning. Again, the paragraph 10 agreement states that it will not pursue... I'm most interested in the additional sentences in paragraph 11, which says this plea agreement, speaking to the whole agreement, binds only the United States Attorney's Office for the Southern District of Texas and the defendant. It does not bind any other United States Attorney. This speaks to the whole plea agreement. How is there any ambiguity remaining? Your Honor, we disagree that the phrase plea agreement does, in fact, in this case, specifically and unambiguously refer to the entirety of the plea agreement, and there are a few reasons for that conclusion. First of all, with regard to common legal practice, the phrase plea agreement is not capitalized to refer to the entire document, notably in the remaining part of the plea agreement documents, such as information and others... I don't understand how that helps you. It's not capitalized in section 10 either. You're relying on section 10, not capitalized, and then the same phrase is used in section 11, not capitalized. What's the point? Correct. With regard to that ambiguity or that alleged different meaning, one aspect is looking to the last antecedent rule. That limitation, the plea agreement, only applies to the Southern District of Texas, follows specifically the agreement in 11 that the United States agrees it will not further criminally prosecute the defendant. In this case, one way in which to interpret plea agreement is an agreement within the plea. The prior agreement to not further criminally prosecute for conduct charged in the information, therefore, only applies to the Southern District of Texas. Again, because of the different language used, contract principles indicate that it should be given different meaning. Again, conduct charged, charged especially in a criminal case being a term of art, and scheme alleged. In the information, the scheme alleged was specifically the opening of numerous bank accounts to transfer and receive proceeds, the wire fraud that was at issue in the Central District of Illinois case. In addition, reading these two agreements, that in paragraph 10 and paragraph 11, as covering different items, would also avoid superfluidity, which this court identified in Foskett, as well as avoiding rendering certain clauses or phrases meaningless in Schilling. Rather, the court looks to the entirety of the agreement, and again, the difference in the language, the repeated limitation with regard to the types of non-prosecution, the different language that is at issue in the different non-prosecution agreements, indicate that this is unambiguously two separate agreements, the paragraph 10 agreement applying to the scheme alleged, that being the conspiracy here. However, if this court does not believe that the language is unambiguously in favor of Mr. Adefuse, many of these same arguments indicate that there is ambiguity as to the language. And again, as this court had indicated in Brown, ambiguities are construed against the government and in favor of the defendant as the non-drafting party. With regard to whether the issue of whether a U.S. Attorney's Office can bind other districts, there is a circuit split. This court has dealt with these issues at least tangentially. Again, Ingram, which I mentioned, as well as in Rourke. Rourke, the specific term at issue, was the government. In that case, Rourke dealt with whether an agreement to not revoke an individual's pilot's license was an appropriate agreement. The court held that the reference to the government definitely does not, in this instance, include other executive agencies such as the FAA that would have the authority to revoke the license. But notably there, Judge Bower, writing in concurrence, indicated that it is of importance to have clarity in plea agreements, specifically with references to terms like the government and United States, because lay people as defendants may not necessarily understand the nuance of what the United States may refer to in a plea agreement and what the government may refer to in a plea agreement. And that is the reason why courts such as Gebbe in the Third Circuit, Margalia Alvera in the Eighth Circuit, Carver in the Fourth Circuit, all apply a presumption in favor of broad application of plea agreements to the whole of the United States, absent a clear and unambiguous limitation clause. But would we have to divorce paragraph 10 from paragraph 11 before we get to Rourke? No, those agreements can cover different matters. Paragraph 10, again, can cover the scheme alleged, that being the wire fraud. Paragraph 11 can relate to other allegations of passport fraud, the conduct that was actually charged in the information. There is nothing in the record to indicate there were any such charges, but that would be the most consistent reading of the language adhering to contract principles. If we look at the language in paragraph 9 that leads us into paragraph 10, all waivers contained in the agreement are made in exchange for these particular concessions by the United States. And so your contention is, looking at that language that leads from 9 to 10, there is ambiguity as to using the word United States as referencing the entire United States, or someone without legal background could walk away with that understanding. Yes, that's correct. And in part because, specifically following then in paragraph 11, as well as in paragraph 6, where another similar limiting phrase is included, the additional caveat of in specifically the Southern District of Texas is added, therefore indicating that references more broadly to the United States means something more broad than that caveat would include. And so there is no distinction for you between the heading United States agreements and then right below that, the agreement binding Southern District of Texas only. So are there two different agreements within this plea agreement or concessions? Yes. And we would agree with the government's position that these are, quote, stand-alone, unquote, agreements. The United States agreements are those done by the party, the United States, all of which, with the exception of the non-prosecution agreement, would be completed at sentencing. And then paragraph 11 is an agreement on behalf of the United States specifically within the Southern District of Texas relating to any further non-prosecution of those matters. Thank you. Thank you, Mr. Stevenson. Ms. Boyle. Good morning, Your Honors. May it please the Court, Counsel, my name is Catherine Boyle on behalf of the United States. The District Court correctly denied Mr. Addifusi's motion to dismiss the indictment because his prosecution for conspiracy to commit wire fraud in the Central District of Illinois was not barred by his earlier plea agreement in the Southern District of Texas relating to his prosecution for aiding and abetting passport fraud. Judge Easterbrook, as you noted, paragraph 11 in the plea agreement speaks to the entire agreement. And it immediately follows paragraph 10, which is the paragraph the defendant has identified using the term United States. Defendant's interpretation of the plea agreement would necessarily read out paragraph 11. And this Court has held that contracts are to be construed in their entirety and all their provisions must be harmonized to ensure that none are rendered meaningless. Do we create two sets of promises? Well, interestingly, if you look at paragraph 10, I think three of the four concessions in paragraph 10 are actually concessions that only the U.S. Attorney's Office for the Southern District of Texas could really make. And those are to dismiss the charges of sentencing and then to not oppose these two different acceptance of responsibility reductions. So in those instances, actually part of paragraph 10 very clearly also refers to the Southern District of Texas. And then paragraph 10 is immediately followed by paragraph 11, which refers to the plea agreement, which is actually this entire agreement's title, and states that the entire agreement is only binding on the Southern District of Texas. So let me ask you again, are there two sets of promises here? No, Your Honor. I think this is a set of promises made by the Southern District of Texas to not pursue additional charges relating to the scheme in this indictment. And I think the scheme alleged and the counts charged is essentially the same thing as we argued in our brief. So I think it's very clear here that this is a set of promises made by one entity, which is the U.S. Attorney's Office for the Southern District of Texas. Is this language in paragraph 11 homebrewed in the Southern District of Texas, or does it come from the United States Attorney's Manual? Your Honor, I would have to double check on the answer to that. I have seen in plea agreements over time variations on this language. I'm not sure that it is always exactly in this format. You would expect that the United States Attorney's Manual would have the language to be used to make it government-wide, the language to be used to make it local. Yes, Your Honor. This is not – one might say this is not professionally drafted. The language that begins this plea agreement binds logically should be paragraph 12, and then it would be clear that that covers every other paragraph. By drafting it as a subpart of paragraph 11, it creates a potential ambiguity. It ought to be in the interest of both the United States and defendants to have a clear template for opting in or out of whole government coverage. Your Honor, I can certainly see the benefit in having a nationwide standard provision in this regard. My understanding presently is that it is often typical for particular districts to have an approved plea agreement that they use, although I can't speak for every district. I just know what I've seen in my own district. I also know, to the extent this is helpful, although this was not discussed in these briefs, as the Solicitor General discussed in its brief in United States v. Maxwell, typically if a U.S. Attorney's Office, according to policy, is going to bind another district, that's something they would either have to consult with the U.S. Attorney for the other district on or they would have to consult with an Assistant Attorney General, and that was mentioned. Can we consider that, though, that the Justice Manual does have limitations on one U.S. Attorney's Office binding another United States Attorney's Office? Well, I don't think it's necessary to consider that here because this is a plea agreement that is not ambiguous, and you don't look to extrinsic information in circumstances such as this one where the plea agreement is straightforward, Your Honor. Is there guidance on how U.S. Attorney's Offices are to draft plea agreements? Your Honor, I imagine there is guidance. As I mentioned to Judge Easterbrook, I'm not sure that there is specific recommended language to be used in every case. And so my question was, is there guidance provided to districts, different U.S. Attorney's Offices, on how to properly draft plea agreements? Your Honor, I would have to – I'm happy to provide supplemental information on that. I don't know specifically the guidance provided from D.C. to various U.S. Attorney's Offices across the country on plea agreements. Do we need to articulate a rule applicable in all cases to resolve this case or can we resolve this case on its facts? This case can be resolved on its facts, Your Honor. This is not a case where we need to delve into exactly what a particular U.S. Attorney's Office is allowed to do in terms of binding other offices. This is a situation where it's very clear from the four corners of this plea agreement that this plea agreement was only meant to bind the Southern District of Texas. So as I mentioned, the plea agreement's language is clear. It says the agreement is binding on the Southern District of Texas only. This is a standalone provision which is intended to apply to the entire plea agreement. It references the plea agreement, which is the title of this document. And paragraph 11, therefore, forecloses Mr. Addifusi's claim that the 2018 plea agreement could have barred his prosecution for related conduct in the Central District of Illinois. The provision doesn't parse the agreement into sections. It doesn't suggest that only parts of the agreement don't bind any other U.S. Attorney's Offices. The language refers deliberately to the plea agreement to encompass the entire document. And that's really all that is needed here to conclude that the 2018 plea agreement does not bind the Central District of Illinois. Could you spend a few minutes, a few seconds maybe, talking about the factual overlap of these two cases? I was not clear from reading the briefs exactly how much overlap there was between these two prosecutions, one in Texas, one up here in Illinois. Yes, Your Honor. So my understanding is that Mr. Addifusi was charged in Texas with aiding and abetting passport fraud. And Mr. Addifusi is the only overlapping defendant between this Texas case involving aiding and abetting passport fraud and the Central District of Illinois case, which involves the eMedRx, the pharmaceutical billing company that was fraudulently induced to transfer funds to various victim accounts. I spoke with the trial attorney handling this case. And my understanding is it is possible that some of the loss amount that went into Mr. Addifusi's account, into the Chase Bank account under the name Patrick Wiltard in Texas, that was noted in the Texas PSR, it is possible that some of that loss amount, but not all of it, is associated with the eMedRx scheme. But some of the eMedRx scheme was not accounted for in that loss amount. And additionally, the court in Texas did not order any restitution to any of the victims. And this is a case where the pharmaceutical billing company was actually driven out of business in the Central District of Illinois case. So these are different co-conspirators alleged. And different criminal activity was involved in the execution of both schemes, am I right? So there is some overlapping activity, but there is different activity. So my understanding is that in the Texas case, some of the fraudulent funds received in Mr. Addifusi's accounts were from a variety of different schemes and different accounts. One account was from the co-conspirators had opened an account under the name of an identity theft fraud victim, another one a romance scam victim, and these various things. There is potentially in the determination of the loss amount in the PSR, $82,000 of the approximately $365,000 in the eMedRx fraud may have been accounted for in the Texas PSR as part of Mr. Addifusi's loss amount. It did not change the... But the fraud against the pharmaceutical company was exclusively in the Illinois prosecution? My understanding is it was in the Illinois prosecution except to the extent when they were looking at relevant conduct in the... And I will double check on this, Your Honor, to make sure. But my understanding is when they were looking at relevant conduct in the PSR, they may have gotten the portion of stolen funds that landed in that Chase Bank account in Texas that was opened with a fraudulent passport, if that makes sense, Your Honor. And that was relevant conduct, not the underlying criminal conduct to the Central District of Illinois, though, right? The Central District of Illinois charged a conspiracy. So it charged the larger conspiracy and the entire $365,000 attributable to all four of the defendants. And then the Southern District of Texas, the count one to which the defendant pleaded guilty, aiding and abetting passport fraud, involved a $25,000 transfer from a fraud account under the name JPK. And then my understanding is the transfer that we were talking about in Central Illinois that was... In April 2018, there was a little bit over $225,000 transferred into the account of a second romance scam victim who was not JPK, who was named in that Southern District of Texas case. And then that scam victim did transfer $50,000 to the Patrick Wiltard checking account on April 25, 2018. And then on April 26, 2018, there was $32,000 transferred into the Wiltard savings account. So that's kind of how those spliced up. Was there any argument in the Illinois case that the prosecution violates the Double Jeopardy Clause? They made that argument, and it was rejected in district court, and they have chosen not to pursue it on appeal. It's not been raised on appeal. Yes, Your Honor. Okay. I see I'm out of time. Do Your Honors have any further questions? Mm-hmm. Thank you, Your Honor. Thank you, Ms. Boyle. Mr. Stevenson, you have six seconds, which I will enlarge to two minutes because Ms. Boyle was held over time. I appreciate that, Your Honor. Just two, perhaps three quick points on rebuttal. Judge Easterbrook, to your point, we would absolutely agree there were any of a number of ways to make this plea agreement unambiguous and to have the meaning that the government would want, having the limitation placed in a separate paragraph clearly indicating it applies to the entire document, perhaps even at the end of the plea agreement, indicating that all that proceeds was not limited. One other point is that the government, as in briefing today, repeats that— May I ask why, if you think there's an overlap in these charges, you're not arguing double jeopardy on appeal? Then you avoid the plea agreement. Yes, Your Honor. With regard to double jeopardy, our understanding of the principles at play would be that because of the nature of the aiding and abetting passport fraud charge in the first case versus the wire fraud conspiracy case, that it would not be appropriate consideration for double jeopardy. Just different elements. Correct. Every element is different. Yes, Your Honor. Thank you. With regard to the language of the two agreements in paragraph 10 and 11, the government repeats today that the phrase scheme alleged and conduct charged are functionally equivalent. And again, at least this leads to ambiguity, again, especially when the second case was charged as a conspiracy and was related to the information from the indictment versus conduct charged, the specific actions and elements that were alleged in the first indictment, that is, aiding and abetting passport fraud. And last, with regard to, I believe it was Judge Pryor, your questions about information as it relates to what might be standard practice or best practices, we do indicate, whether it's through ambiguity or for broader context, I believe it is 16 different Southern District of Texas plea agreements and similar fraud cases, all of which contain very similar language as paragraph 11 in Mr. Adefuse's agreement, but it does not contain the additional section in paragraph 10 specifically related to further non-prosecution.  Thank you, Your Honor. Thank you, Mr. Stevenson. And we appreciate your willingness and that of the Remington Center and your students to accept the appointment in this case and your assistance to the court as well as your client. Thank you. The case is taken under advisement.